IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

| | | |
|---|---|---|
| TAYLOR FOLEY, | ) | |
| | ) | |
| Plaintiff | ) | 1:24-CV-00322-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| LAUREL HARRY, SECRETARY OF | ) | |
| CORRECTIONS OF THE | ) | MEMORANDUM OPINION ON |
| COMMONWEALTH OF | ) | DEFENDANTS' MOTION TO DISMISS |
| PENNSYLVANIA, IN HER OFFICIAL | ) | |
| AND INDIVIDUAL CAPACITY; AND | ) | |
| LISA GRAVES, SUPERINTENDENT OF | ) | RE: ECF NO. 5 |
| SCI CAMBRIDGE SPRINGS, IN HER | ) | |
| OFFICIAL AND INDIVIDUAL | ) | |
| CAPACITY, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

Defendants Laurel Harry and Lisa Graves have moved to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6). For the reasons below, Defendants' motion will be GRANTED, and this action will be dismissed with prejudice.

## I.      Relevant Procedural History

Plaintiff Taylor Foley ("Foley") is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") at its State Correctional Institute at Cambridge Springs ("SCI-Cambridge Springs"). She sues Laurel Harry, the Secretary of the DOC, and Lisa Graves, the Superintendent of SCI-Cambridge Springs, and asserts claims pursuant to 42 U.S.C. § 1983 for violations of her Fourteenth Amendment procedural and substantive due process rights. The Defendants have moved to dismiss Foley's Complaint under Rule 12(b)(6). *See* ECF Nos. 5 (motion), 6 (brief). Foley has filed a response in opposition to the motion. *See* ECF No. 11. The motion is ripe for decision.

## II.    Material Facts

The following factual allegations of Foley's Complaint are accepted as true for purposes of the Defendants' motion to dismiss. On April 22, 2024, Foley returned to her cell after showering and was assaulted by her cellmate, Inmate Morris, who struck Foley in the head with a closed fist. ECF No. 1, ¶¶ 10–12. Corrections Officer Fraiser and other inmates witnessed the assault, but no disciplinary action was taken against Morris. *Id.* ¶¶ 13–14.

Later that day, Foley went to the 1800 yard to play basketball. *Id.* ¶ 15. She called out to Inmates Devalle and Liverpool, with whom she was acquainted. *Id.* ¶¶ 16–17. After they ignored her, Foley approached them to ask what was happening. *Id.* ¶¶ 17–18. Inmate Liverpool responded that Morris "shouldn't have hit you." *Id.* ¶ 19. Devalle and Liverpool then began running toward the yard. *Id.* ¶ 20. Aware of previous tensions between Morris and the two inmates, and fearing a potential altercation, Foley moved in the opposite direction. *Id.* ¶¶ 21–22. Lieutenant Moore observed this interaction. *Id.* ¶ 23.

An altercation subsequently occurred between Morris, Devalle, and Liverpool. *Id.*, ¶ 24. As a result, all three, along with Foley and several other inmates, were placed in administrative segregation. *Id.* ¶ 25. Lieutenant McCurdy, who did not witness the incident, authored charges against Foley for fighting and engaging in or encouraging unauthorized activity, but those charges were dismissed without prejudice. *Id.* ¶¶ 26–29. Several days later, Lieutenant McCurdy revised the charges against Foley for assault, fighting, and engaging in or encouraging unauthorized group activity. *Id.* ¶¶ 31–32.

Foley submitted an Inmate Request for Representation and Witnesses form, identifying Inmate Falcon, Lieutenant Moore, and Lieutenant Arndt as individuals who could corroborate that she did not participate in or encourage the incident. *Id.* ¶¶ 33–34. The hearing examiner denied

Foley's request for witnesses, stating their testimony was "not needed to determine guilt or innocence." *Id.* ¶ 35. Even still, Lieutenant Moore did testify that he had observed a large-scale altercation and acted to control the situation. *Id.* ¶ 37. The hearing examiner ultimately found Foley guilty of encouraging unauthorized group activity and dismissed the remaining charges. *Id.* ¶ 36.

Foley contends that Lieutenant Moore's testimony did not establish her involvement in the incident by a preponderance of the evidence. *Id.* ¶ 39. She also asserts that video footage existed showing her running away from the incident. *Id.* ¶ 38. But the Complaint does not allege that Foley requested that the footage be preserved or reviewed during the disciplinary process. Foley appealed the disciplinary decision, but her appeal was denied. *Id.* ¶¶ 40–41. As a result of the disciplinary conviction, Foley is no longer eligible for early release after serving her minimum sentence. *Id.* at 7 ¶ 1.

### III.    Foley's Claims and Defendants' Motion to Dismiss

Foley's Complaint raises two claims: (1) Count I, Violation of Procedural Due Process; and (2) Count II, Violation of Substantive Due Process. Foley seeks compensatory and punitive damages, a declaration that the Defendants' actions violated her constitutional rights, and a mandatory injunction that Defendants clear her disciplinary record. She has sued Harry and Graves in their individual and official capacities.

Defendants' motion to dismiss raises three arguments: (1) Foley's claims against Defendants in their official capacities are barred by Eleventh Amendment immunity; (2) the Complaint fails to allege facts to support the personal involvement of Harry or Graves; and (3) the Complaint fails to state a claim for violation of Foley's Fourteenth Amendment due process rights.

## IV.    Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal* Practice, *and Procedure* § 1216, pp. 235-236 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

V.    **Analysis**

   A.  **Eleventh Amendment official capacity immunity bars Foley's money damages claims against Defendants in their official capacities but not her claims for injunctive relief.**

Defendants assert that the individual defendants acting in their official capacities are immune from suit under the Eleventh Amendment to the Constitution. *See* ECF No. 6, pp. 4–5. It is unclear from Foley's Complaint in what capacity she is suing the Defendants for money damages. Claims for money damages against state officials in their individual capacities are permissible. *Caesar v. Kemp*, 2024 WL 842169, at *4 (W.D. Pa. Jan. 29, 2024*), report and recommendation adopted*, 2024 WL 839061 (W.D. Pa. Feb. 27, 2024). But to the extent Foley seeks money damages against the Defendants in their official capacities, her claims are barred by Eleventh Amendment immunity. *See id.* Any such claims will be dismissed with prejudice.

The Eleventh Amendment does not bar claims for injunctive and other prospective relief against state officials in their official capacities. *Ex Parte Young*, 209 U.S. 123, 129 (1908).   "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). And "claims requesting prospective injunctive relief from official-capacity defendants do not run afoul of sovereign immunity." *See Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) (citing *Perry v. Pennsylvania Dep't of Corr.*, 441 Fed. Appx. 833, 836 (3d Cir. 2011)). To avoid the bar of the Eleventh Amendment, however, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)). In determining whether the Eleventh Amendment bars the

claim, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted). "This exception to the Eleventh Amendment is a very narrow one, permitting plaintiffs to seek prospective relief, and only when a state official and not the State or a state agency is the named defendant." *Doe v. Div. of Youth & Fam. Servs.*, 148 F. Supp. 2d 462, 483 (D.N.J. 2001) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

Here, Foley asks for a declaration that the Defendants prior actions violated her constitutional rights and an injunction requiring Defendants to clear her disciplinary record. The declaratory relief Foley seeks is retrospective and, therefore, unavailable. She does not allege any continuing constitutional violation to support declaratory relief. Her request for an injunction to clear her disciplinary record is prospective enough to survive dismissal. As explained below, however, Foley's Complaint is nevertheless subject to dismissal because it fails to allege facts to support the Defendants' personal involvement in any actionable conduct or facts to support a protected liberty or property interest on which to base a due process claim.

### B. The Complaint fails to allege facts to support Harry or Graves' personal involvement in actionable conduct.

Foley's Complaint alleges that various members of the staff at SCI-Cambridge Springs denied her a full opportunity to provide evidence in her disciplinary hearing and otherwise denied her a fair hearing. She does not, however, allege that Defendant Harry or Defendant Graves participated in any way in the disciplinary proceedings. Instead, Foley bases her claim against Harry based on the allegation that she "is responsible for the overall management and operations of the adult corrections system in Pennsylvania, including protecting the rights of individuals in the custody of the Department of Corrections, and determining the rules, regulations, and policy

regarding the operation of the Department." ECF No. 1, ¶3. Regarding Graves, Foley alleges that as Superintendent of SCI-Cambridge Springs, she "makes operational decisions concerning staffing, budget and administration." *Id.*, ¶7.

A successful § 1983 plaintiff must prove that a defendant, acting under color of state law, deprived her of a right secured by the Constitution or laws of the United States. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 667 (2009) ("In a § 1983 suit ..., each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). This requirement applies with equal force to § 1983 claims against supervisory officials; "[s]upervisory liability cannot be based solely upon the doctrine of respondeat superior...." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 377 (1976)). Instead, "there must be affirmative conduct by the supervisor that played a role in the [subordinate's wrongful conduct]." *Id.* At the pleading stage, the plaintiff must allege facts to support an inference that the supervisor personally directed or had actual knowledge of and acquiesced in the subordinate's misconduct. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Allegations of participation or actual knowledge and acquiescence ... must be made with appropriate particularity." *Id.* This includes place and time allegations. *Evancho*, 423 F.3d at 354. A plaintiff's mere hypothesis that an individual defendant had personal knowledge of or involvement in depriving the plaintiff of his rights cannot establish a supervisor's personal involvement. *Id.*

Foley relies solely on the supervisory authority and responsibilities of the Defendants as the basis for her claims against them. This reliance is misplaced. Absent factual allegations to show that some affirmative conduct by the Defendants played a role in their subordinates' alleged

wrongful conduct, Foley's § 1983 claims against them fail as a matter of law and must be dismissed.

### C. Foley's procedural or substantive due process claims also fail because her Complaint does not support a protected liberty or property interest.

A court's examination of procedural due process under the Fourteenth Amendment requires a two-step analysis. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972). First, the court must determine whether the state has interfered with an existing protected liberty or property interest. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Board of Regents*, 408 U.S. at 571). Here, Foley bases her claim on a liberty interest. A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). Second, and only if a plaintiff establishes the existence of a protected interest, the court must then examine whether the procedures attendant upon the deprivation were constitutionally sufficient. *Id.*, at 471.

Foley claims a protected liberty interest under state law based on a two-part argument. She claims that the prison's unfair disciplinary procedures require that it clear her disciplinary record, and she asserts that such relief would make her eligible for early release upon service of her minimum sentence under the Recidivism Risk Reduction Incentive ("RRRI") program. Foley's argument fails on both propositions.

First, Foley cannot base her liberty interest on the RRRI program because this case does not involve any decision on RRRI program eligibility. The process she challenges as unfair is the disciplinary process, not the RRRI program eligibility process. Thus, Foley must find a protected liberty interest tied directly to the disciplinary proceedings. She cannot rely on what she believes will be the secondary consequences of her discipline in unrelated RRRI program proceedings.

In the prison disciplinary context, a liberty interest exists only when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law.'" *Parkell v. Linsey*, 764 Fed. Appx. 136, 137 (3d Cir. 2019) (quoting *Sandin*, 515 U.S. at 485. For example, "an administrative sentence of disciplinary confinement, by itself, is not sufficient to create a liberty interest...." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (citing *Sandin*, 515 U.S. at 486). Even disciplinary proceedings that result in confinement in a restrictive housing unit for as long as 15 months do not trigger a liberty interest. *See Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997). Foley has not alleged any facts to support that the disciplinary proceedings that she challenges imposed an atypical and significant hardship. Therefore, those proceedings do not support a protected liberty interest.

Second, even ignoring the disconnect between disciplinary proceedings at issue and the RRRI program, the latter also does not support a liberty interest. The RRRI statute, 61 Pa. C.S.A. § 4506, establishes a framework intended to encourage inmate rehabilitation by providing for earlier parole eligibility upon successful completion of designated programming. Inmates who fulfill the requirements of the RRRI program may be considered for parole at the expiration of their RRRI minimum sentence. *Id.* Although inmates have no constitutional or inherent right to parole, a state statute may create a liberty interest protected by the Due Process Clause if it establishes a sufficient expectation of release. *See Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979); *Bonilla v. Vaughn*, 1998 WL 480833, at 8 (E.D. Pa. Aug. 14, 1998) ("Although the Constitution does not create a liberty interest in the expectation of parole... a state statute may create a liberty interest by creating an expectation of parole under certain

circumstances."); *Watson v. DiSabato*, 933 F. Supp. 390, 392 (D.N.J. 1996) (quoting Greenholtz, 442 U.S. at 7). But the RRRI statute specifically disclaims that it confers an enforceable legal right upon any individual, including those who are participating in or seeking to participate in the program. The statute provides that it shall not be construed to do any of the following:

> 1. Confer any legal right upon any individual, including individuals participating or seeking to participate in the program to:
>
>    i.   Participate in a recidivism risk reduction incentive program.
>
>    ii.  Continue participation in a recidivism risk reduction incentive program.
>
>    iii. Modify the contents of the recidivism risk reduction incentive program.
>
>    iv.  File any cause of action in any Federal or State court challenging the department's determination that a participant is to be suspended or expelled from or that a participant has successfully completed or failed to successfully complete any recidivism risk reduction incentive program.
>
> 2. Confer any legal right on any individual to be released on parole under this chapter.
>
> 3. Enlarge or limit the right of a participant to appeal the participant's sentence.

61 Pa. C.S.A. § 4511.

Because the RRRI program confers no legal right upon an inmate before the granting of parole itself, it cannot support a liberty interest protected by the Due Process Clause. *See Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (recognizing that a convicted person has "no constitutional or inherent right … to be conditionally released before the expiration of a valid sentence…"). Without a liberty interest, no violation of due process

arises when an inmate's RRRI program eligibility or early release is modified or denied.[1] *Garrison v. Clark*, 2017 WL 368112 (W.D. Pa Jan. 25, 2017) ("although the court imposes an RRRI Act minimum sentence, the offender is not guaranteed a right to be granted parole upon the expiration of that term."); *Brown v. Clemens*, 2024 WL 4601681 (3d. Cir. 2024) ("Pennsylvania law [under the RRRI] grants parolees 'a liberty interest in the limited liberty offered by parole that cannot be taken away without affording the parolee minimal due process guarantees,' although this interest is only activated when parole is granted."). Because neither the disciplinary proceedings nor the RRRI program supports a liberty interest, Foley's procedural due process claim fails as a matter of law. And the absence of a liberty interest also dooms Foley's substantive due process claim because a protected property or liberty interest is also an essential element of a substantive due process claim. See *Roberts v. Mentzer*, 382 Fed. Appx. 158, 166 (3d Cir. 2010) Therefore, Foley's procedural and substantive due process claims will be dismissed.

## VI.    Conclusion

For the above reasons, the Court will grant Defendants' motion to dismiss. Furthermore, the nature of the multiple defects in Foley's claims make any attempt to cure them by amendment futile. The Court will therefore dismiss Foley's Complaint with prejudice. A separate order will issue.

DATED this 21st day of July 2025.

---

[1] In *Ricker v. Pennsylvania Department of Corrections*, 2022 WL 533818 (M.D. Pa. Feb. 2, 2022), the court found that the use of "shall" in the RRRI statute created a protected property interest in early parole eligibility through participation in the program. However, this interpretation conflicts with the express language of 61 Pa. C.S.A. § 4511, which states that "[n]othing in this chapter shall be construed to confer any legal right upon any individual to participate in or successfully complete the program."

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE